1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KING COUNTY,<br><br>                    Plaintiff,<br>     v.<br><br>MICHAEL J. ABERNATHY et al.,<br><br>                Defendants. | CASE NO. 3:20-cv-60-DEG-SKV<br><br>ORDER CERTIFYING QUESTION<br>TO WASHINGTON STATE<br>SUPREME COURT |

This matter comes before the Court *sua sponte*.  The Court, being fully advised, certifies

the following constitutional question to the Washington State Supreme Court pursuant to

Washington Revised Code § 2.60.020:

> Is a right of way approved by the United States Department of the Interior under
> the General Railroad Right–of–Way Act of 1875, 43 U.S.C. §§ 934–939, a
> conveyance "patented by the United States" under Article XVII, § 2 of the
> Washington State Constitution?

## I.     BACKGROUND

This lawsuit concerns a 3.6-mile section of land along the eastern side of Lake

Sammamish in Washington State, the western edge of which runs over shoreland.  (Dkt. No. 96

at 2.)  The Corridor originally came to be in 1887 when the federal government granted the Seattle, Lake Shore & Eastern Railway Company ("SLS&E") a "right of way" to build a railroad, which it did, under the General Railroad Right-of-Way Act of 1875, 43 U.S.C. §§ 934-939 ("1875 Act").  (*Id.*)  In 1998, the then out–of–service rail corridor (the "Corridor") was "railbanked" under the National Trails System Act Amendments of 1983, 16 U.S.C. § 1247 *et seq.*, and later deeded to Plaintiff King County, which currently operates the Corridor as a public trail.  (*Id.*).

On July 26, 2021, Magistrate Judge S. Kate Vaughan, to whom this case was referred, issued a Report and Recommendation ("R&R") resolving motions for summary judgment filed by all parties (Dkt. Nos. 40, 48, 65).  (Dkt. No. 96).  The R&R found that the strip of shoreland within the Corridor had been "patented" by the federal government prior to Washington becoming a state, and therefore, that Washington had disclaimed its interest in that land under Article XVII, § 2 of the Washington State Constitution.  (Dkt. No. 96 at 19–26.)  Because Washington had disclaimed its interest in that shoreland, Washington never had authority to sell the land to the Defendants' common predecessor in interest, thereby making King County the true owner.  (*Id.* at 26.)

On May 26, 2022, the Court requested briefing limited to whether the Court should certify the question of whether the right of way granted under the 1875 Act granted a "patented" right under Article XVII, § 2.  (Dkt. No. 140.)  Defendants responded in opposition to certification (Dkt. No. 144), and Plaintiff King County responded in support of certification (Dkt. No. 145).

1

## II.   DISCUSSION

2    Under Washington law, a federal court may certify a question to the Washington State

3  Supreme Court when "it is necessary to ascertain the local law of this state in order to dispose of

4  such a proceeding and the local law has not been clearly determined."  Wash. Rev. Code

5  § 2.60.020.

6    This case presents a novel question of Washington constitutional interpretation and

7  resolution of that question is necessary to dispose of the proceeding.  The novel question before

8  the Court is whether a railroad right of way granted by the General Railroad Right–of–Way Act

9  of 1875 ("1875 Act") conveyed a "patented" right under Article XVII, § 2 of the Washington

10  State Constitution.

11    The 1875 Act provided a mechanism for railroad companies to obtain rights of way over

12  land to build railroads and encourage development.  In 1887, SLS&E submitted a map of a

13  proposed rail corridor running along the eastern side of Lake Sammamish to the Department of

14  the Interior pursuant to the 1875 Act.  (Dkt. 66-1 at 2.)  The description of the right of way

15  included shoreline along Lake Sammamish.  SLS&E completed track construction in 1888 and

16  filed a second map showing the definite location of its completed tracks in 1891.  (Dkt. Nos. 65-

17  1, 66-3).  The second map showed portions of the constructed railroad running over lake

18  shorelands.  (*Id.*)

19    The federal government, however, does not have an absolute right to grant shoreland.

20  *See Montana v. United States*, 450 U.S. 544, 551 (1981) (discussing the equal footing doctrine).

21  When Washington became a state in 1889, it included an article—Article XVII—specifically

22  addressing its special interest in shoreland.  Article XVII, § 1 reads:

23       The state of Washington asserts its ownership to the beds and shores of all
       navigable waters in the state up to and including the line of ordinary high tide, in

24

waters where the tide ebbs and flows, and up to and including the line of ordinary high water within the banks of all navigable rivers and lakes: *Provided*, that this section shall not be construed so as to debar any person from asserting his claim to vested rights in the courts of the state.

Wash. Const. art. XVII, § 1.

Through this section, Washington asserts its ownership over beds and shores of navigable waters.  Article XVII, § 2, however, is a disclaimer.  It reads: "The state of Washington disclaims all title in and claim too all tide, swamp and overflowed lands, patented by the United States: *Provided*, the same is not impeached for fraud."  Wash. Const. art. XVII, § 2.  Section 2 analysis, arguably, is "simple" as it requires only that "the claimant under [a] federal patent at the time of statehood had made proof of all facts necessary to cause the patent to issue.  *Anderson v. Olson*, 461 P.2d 343, 346 (Wash. 1969)  In such instance, the shoreland belongs to the party with the patented interest instead of the State.  *Id.*

In this case, however, the R&R found the approval of SLS&E's map, which showed the right of way boundaries extending over shoreland, "is equivalent to a conveyance or patent from the government . . . ."  (Dkt. No. 96 at 21.)   Accordingly, the right of way was "patented," and Washington disclaimed its interest in the land and did not have the authority to subsequently sell it to Defendants' predecessor in interest.  (*Id.*)[1]  To support this position, the court looked to cases holding "that rights of way granted under the 1875 Act are equivalent to 'patented' rights."  (*Id.* (citing *Great N. Ry. Co. v. Steinke*, 261 U.S. 119, 125 (1923) ("There is no provision in the [1875 Act] for the issue of a patent, but this does not detract from the efficacy of the grant. The approved map is intended to be the equivalent of a patent defining the grant conformably to the

---

[1] Defendants argue that resolving whether the right of way was "patented" is a federal question. (Dkt. No. 144 at 2.)  It is not.  It depends on the definition of "patented" in the Washington State Constitution.  While a federal definition of patented may reflect the § 2 definition, it is not dispositive.

ORDER CERTIFYING QUESTION TO WASHINGTON STATE SUPREME COURT - 4

intendment of the act . . . ."); *Oregon Trunk Line v. Deschutes R. Co.*, 172 F. 738, 740 (C. C. D. Or. 1909) ("The approval of the [1875 Act] map is therefore the act which vests in the corporation title to a definite right of way over the public lands for a road thereafter to be constructed. Such approval is equivalent to a conveyance or patent from the government for the route delineated on the plat . . . ."); *see also Noble v. Union River Logging R. Co.*, 147 U.S. 165, 174–77 (1893).)  These cases, however, are not directly controlling over the present issue.

In *Noble v. Union River Logging*, the United States Supreme Court considered whether the secretary of the interior could revoke and annul a right of way given by his predecessor under the 1875 Act.  147 U.S. at 166.  The Court compared the right of way to other property rights, including patents, and held that because the right had been given to the railroad company, "[i]t was not competent for the secretary of the interior thus to revoke the action of his predecessor . . . ."  *Id.* at 177.  In *Great N. Ry. Co. v. Steinke*, the Supreme Court used similar logic to decide whether a subsequent land sale could extinguish an 1875 Act right of way.  The plaintiff, St. Paul, Minneapolis & Manitoba Railway Company, "sought and secured" a right of way under the 1875 Act.  Later, Philander Pollock received a "patent" for title to a larger tract of land that included the right of way.  261 U.S. at 120–22.  The Court held that despite Philander Pollock's patent, which made no reference to the railroad company's claim, and despite "no provision in [the 1875 Act] for the issuance of a patent," the right given to the railroad was "intended to be the equivalent of a patent."  *Id.* at 125.  Therefore, the railroad company maintained its right despite Pollock's intervening claim.  *Id.*  The remaining case cited by the R&R, *Oregon Trunk Line v. Deschutes R. Co.*, clarifies that, like a patent, only a party with a legitimate interest in the land can challenge the issuance of the right of way.  172 F. 738 (defendant "was a stranger to the proceedings and the title" who could not challenge the legitimacy of plaintiff's right of way).

The first edition of Black's Law Dictionary, from 1891, defines a patent as:

PATENT, *n.* A grant of some privilege, property, or authority, made by the government or sovereign of a country to one or more individuals. Phil. Pat. 1.
In English law. A grant by the sovereign to a subject or subjects, under the great seal, conferring some authority, title, franchise, or property; termed "letters patent" from being delivered open, and not closed up from inspection.
In American law. The instrument by which a state or government grants public lands to an individual.
. . .

(Dkt. No. 106 at 4.) [2]

Defendants argue, based on this definition, a patent can only apply to a grant of title. (Dkt. No. 105 at 5–7.) The Black's Law Dictionary definition does not say that it only applies to a grant of title, but it does say that it is an "instrument by which a state or government grants public lands. . . ."[3] By using the word "instrument," Black's Law Dictionary indicates receiving a patent requires going through a certain process.[4]

Statutes that grant land patents appear to both explicitly state that they grant patents and include a section describing the process for obtaining one. For example, the Homestead Act of

---

[2] Railroad companies, as opposed to only individuals may have "patented" rights under Article XVII, § 2. *Kneeland v. Korter*, 40 Wash. 359, 366 (1905) (discussing § 2 as applied to a patent granted by the 1864 Railway Act).

[3] Defendants argue that the right of way cannot be "patented" because it is an easement. (Dkt. No. 144 at 2.) It is well established, and not disputed, that the right of way is an easement. *Marvin M. Brandt Revocable Tr. v. United States*, 572 U.S. 93, 103 (2014) (quoting *Great N. R. Co. v. United States*, 315 U.S. 262, 271 (1942)). *Brandt* does not resolve this matter, as Defendants argue, because it does not establish that an easement cannot be "patented."

[4] Defendants also argue that the right of way was not "patented" because the 1875 Act did not grant a "privilege, property or authority, made by the government." (Dkt. No. 144 at 3.) While the 1875 Act may not have permitted the federal government to grant the right of way over shoreland, *Kneeland v. Korter* firmly held that Washington disclaimed its interest in shoreland under § 2 if the interest was "patented" regardless of whether the federal government properly granted the right. 40 Wash. at 365–66. Defendants do not demonstrate an easement cannot be patented under § 2. The question remains whether approval of the map showing the right of way going over shoreland "patented" SLS&E's interest in that land for purposes of Article XVII, § 2.

1862, 43 U.S.C. §§ 161–164 (repealed 1976), set forth specific conditions when certain citizens may "acquire the absolute title by the purchase, and be entitled to a patent from the United States, on payment of the office fees and sum of money herein specified."   Under the General Mining Act of 1872, 30 U.S.C. §§ 21–51, an authorized "person, association, or corporation" "may obtain a "patent" by complying with specific conditions.  30 U.S.C. § 29; *R.T. Vanderbilt Co. v. Babbitt*, 113 F.3d 1061 (9th Cir. 1997).  The same is true of the Preemption Act of 1841, 5 Stat. 457, and the Pittman Underground Water Act of 1919, ch. 77, 41 Stat. 293 (repealed 1964). The 1875 Act does not include a process for receiving a patent.  43 U.S.C. § 934.  Nonetheless, as previously discussed in this Order and in the R&R, that "does not detract from the efficacy of the grant," which was intended to "be the equivalent of a patent."  *Great N. Ry. Co.*, 261 U.S. at 125.

As such, whether approval of a railroad right of way running over shoreland by the Department of the Interior pursuant to the 1875 Act conveyed a "patented" right under Article XVII, § 2 presents a novel question of Washington constitutional interpretation.  This question has potential public policy implications and is properly resolved by the Supreme Court of Washington.  Therefore, the Court certifies the question as listed at the beginning of this Order.

### III.   ORDER

Therefore, it is HEREBY ORDERED that:

- The Court certifies the question presented in this Order to the Washington State Supreme Court;

- The following documents are certified for review by that court:

1          o    This Order; Dkt. Nos. 1, 40, 43, 45, 46, 48, 49, 50, 64, 65, 66, 67, 68, 70,

2               71, 72, 73, 74, 75, 76, 79, 82, 84, 85, 96, 103, 105, 106, 107, 108, 109,

3               110, 111, 112, 113, 114, 140, 144, 145.

4       The Clerk is directed to send uncertified copies of this Order to all counsel of record and

5 to any party appearing pro se at said party's last known address.

6

7

8       Dated this 5th day of July 2022.

9

10

                                            David G. Estudillo

11                                       United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24